1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    DEMETRIS D. LAWRENCE,

12                  Plaintiff,                          No. 2:23-cv-01717-TLN-JDP

13

14           v.                                         **ORDER**

15    DANIEL DRISCOLL, Secretary,
      Department of the Army,

16
                    Defendant.
17

18           This matter is before the Court on Defendant Daniel Driscoll's ("Defendant") Motion to

19    Dismiss.[1]  (ECF No. 16.)  Plaintiff Demetris D. Lawrence ("Plaintiff") filed an opposition.  (ECF

20    No. 22.)   Defendant filed a reply.  (ECF No. 25.)  For the reasons set forth below, Defendant's

21    motion is GRANTED in part and DENIED in part.

22    ///

23    ///

24    ///

25    _____

26    [1]      Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), "[t]he officer's successor is
      automatically substituted as a party" when a public officer "ceases to hold office while the action

27    is pending."  Fed. R. Civ. P. 25(d).  Accordingly, Daniel Driscoll is automatically substituted as a
      party for Christine Wormuth, the former Army Secretary.  The Clerk of the Court is directed to

28    update the docket as necessary.

                                                     1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**[2]

2    The instant matter arises from Defendant's alleged race discrimination and retaliation in

3    employment.  (*See* ECF No. 12.)  Plaintiff is an African American woman who had a 35-year

4    successful career in public service employment, including 26 years as a federal employee, more

5    than 20 years in human resources, and a master's degree.  (*Id.* at 1–2.)  In Plaintiff's prior

6    positions with federal agencies, she rose to the level of GS-11, gaining work experience in human

7    resources.  (*Id.* at 2.)  After taking time off from federal employment (from May 2011 to March

8    2016 and from February 2017 to October 2017), Plaintiff began working for the Army's Civilian

9    Human Resources Agency ("CHRA") in October 2017.  (*Id.* at 2–3.)  Plaintiff was reduced to

10   GS-7 at the start of her federal reemployment but reasonably expected to advance quickly to

11   higher service levels and higher pay.  (*Id.* at 3.)

12   Plaintiff alleges that under the control of non-African American management at CHRA,

13   including her white immediate supervisor Elsa Newland ("Newland") and her white manager

14   Andrew Jenson ("Jenson"), Plaintiff's career remained stagnant after two and a half years.  (*Id.*)

15   Plaintiff further alleges that, as CHRA managers, supervisors, and directors knew, the agency had

16   created a severe and pervasive hostile workplace for African American employees, who were

17   repeatedly subject to a continuing course of disparate treatment based upon their race with respect

18   to hiring, training, promotion, performance review, discipline, and actual or constructive

19   termination.  (*Id.*)  Plaintiff generally alleges because of her race and complaints about systemic

20   racism: she was refused training and assistance necessary to succeed; she was denied a promotion

21   for which she was qualified; she was separated and isolated from others in the workplace; she was

22   stripped of responsibilities and humiliated by her direct supervisors; she was falsely accused of

23   lying and acts of poor performance; and her complaints to management over discrimination fell

24   on deaf ears — causing her to suffer psychological disabilities and, ultimately, loss of her job.

25   (ECF No. 22 at 8 (citing ECF No. 12 ¶¶ 7–40).)

26   *///*

27   ───────────────

28   [2]    The factual background is taken largely verbatim from Plaintiff's First Amended Complaint.  (ECF No. 12.)

2

On September 18, 2018, Plaintiff initiated a complaint of race discrimination with the Department of Defense Equal Employment Opportunity ("EEO") agency. (ECF No. 12 at 4.) Plaintiff asserted in her complaint that, because of her race, her supervisors and managers had been "creating an atmosphere of division," joining "forces with Caucasian HR specialists," invading her privacy by consulting with these other employees about private employment matters, creating a "hostile work environment," removing her duties and responsibilities, restructuring the office to "isolate" her "from the rest of the team" with "all of the Human Resources staff at one end" so that she "sat at the other far end alone," conducting regular meetings where she was neither invited nor included, and failing to undertake an investigation when she complained of those actions. (*Id.*)

On September 21, 2018, Newland had a meeting with Plaintiff where Newland approved of Plaintiff's request for training. (*Id.*) Plaintiff recorded that Newland told Plaintiff she was aware of Plaintiff's "unhappiness" and that "change required a process." (*Id.*) Newland allegedly offered false reasons for its discriminatory treatment of African American employees and attempted to convince Plaintiff during this meeting that CHRA would work with Plaintiff to reach a solution to her complaint and provide her with the same opportunities provided to non-African American employees. (*Id.*) Newland further allegedly offered two options — move to reassignment in Washington, D.C. or await development of a plan that allows Plaintiff to perform work requiring judgment analysis. (*Id.*)

Plaintiff alleges Newland never developed such a plan and never intended to, but rather hoped to convince Plaintiff to withdraw her initial EEO complaint. (*Id.*) Newland and Jenson allegedly conspired to force Plaintiff to quit, working behind the scenes to undermine her work performance and make her miserable in the workplace. (*Id.*) Plaintiff alleges that because of Newland's false representations about the agency's purported determination to treat her equally and enable her to be successful on the job, she withdrew her initial EEO complaint on January 25, 2019. (*Id.*)

On February 14, 2019, Jenson and Newland informed Plaintiff that they were denying her a promotion to Human Resources Specialist. (*Id.* at 6.) Between that date and March 6, 2019,

1    Newland allegedly continued to take further actions against Plaintiff as part of a discriminatory

2    pattern.  (*Id.* at 6.)  Plaintiff alleges there are emails between Newland and Jenson containing

3    evidence of their discriminatory animus and wrongful conduct, including proof Jenson lied to the

4    investigator about Plaintiff's complaint.  (*Id.* at 7–11.)  Plaintiff further alleges how the hostile

5    treatment affected her and Lumbala Wa Lumbala ("Lumbala"), the only other African American

6    employed at the agency.  (*Id.* at 10–11.)

7         On April 11, 2019, Plaintiff renewed her complaint at the EEO office, adding facts about

8    retaliation resulting from her complaints to Jenson and the office regarding systemic

9    discrimination.  (*Id.* at 14.)  Plaintiff alleges that at the time of this complaint, she had full

10   intention to complain about systemic race discrimination raised in the prior complaint and insisted

11   on a reference in the renewed complaint to her prior complaint and allegations.  (*Id.* at 14–15.)

12   Plaintiff sought a hearing with the EEOC and was then represented by counsel.  (*Id.* at 15.)

13   Plaintiff alleges that during this process, she made it clear to the hearing officer that her complaint

14   included race discrimination and hostile work environment on the basis of race, as well as

15   retaliation.  (*Id.*)  For example, a May 27, 2020 Preliminary Case Information form requests an

16   opportunity to take discovery on "continuing" discriminatory and retaliatory treatment.  (*Id.* at

17   15–16.)  On October 14, 2021, Plaintiff was denied an administrative hearing and summary

18   judgment was granted to Defendant.  (*Id.* at 16.)  Plaintiff alleges the administrative law judge

19   expressly addressed her claim of race discrimination.  (*Id.*)  On November 23, 2021, Defendant

20   issued its Final Action and on December 23, 2021, Plaintiff noticed an appeal to the EEOC.  (*Id.*)

21   On May 15, 2023, the EEOC issued a decision on the appeal and notified Plaintiff of her right to

22   bring this action within 90 days of receipt.  (*Id.* ta 17.)

23        Plaintiff filed this action on August 14, 2023.  (ECF No. 1.)  Plaintiff filed the operative

24   First Amended Complaint ("FAC") on March 29, 2024, alleging the following claims: (1) race

25   discrimination in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e-2, et

26   seq.; and (2) retaliation for complaint of race discrimination in violation of Title VII.  (ECF No.

27   12.)  Defendant filed the instant motion to dismiss on May 3, 2024.  (ECF No. 16.)

28   ///

1    **II.    STANDARD OF LAW**

2        A motion to dismiss for failure to state a claim upon which relief can be granted under

3    Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

4    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

5    "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

6    *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

7    complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

8    which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

9    "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

10   motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*

11   *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

12       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

13   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

14   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

15   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

16   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

17   relief."  *Twombly*, 550 U.S. at 570.

18       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

19   factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

20   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

21   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

22   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

23   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

24   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

25   statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

26   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

27   been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

28   U.S. 519, 526 (1983).

1    Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

2    facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting

3    *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

4    content that allows the court to draw the reasonable inference that the defendant is liable for the

5    misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability

6    requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."

7    *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to

8    draw on its judicial experience and common sense." *Id.* at 679.

9    In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

10   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

11   *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

12   *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

13   If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

14   amend even if no request to amend the pleading was made, unless it determines that the pleading

15   could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

16   1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

17   **III.   ANALYSIS**

18   Defendant argues: (1) Plaintiff failed to exhaust administrative remedies as to her race

19   discrimination claim;[3] (2) even if Plaintiff had exhausted her race discrimination claim, she fails

20   to state a claim for race discrimination; (3) Plaintiff fails to state a claim for retaliatory non-

21

22   [3]    Defendant moves to dismiss Plaintiff's race discrimination claim pursuant to Rule
     12(b)(1) on the basis that Plaintiff failed to exhaust her administrative remedies. (ECF No. 16-1
23   at 7, 12–15.) In opposition, Plaintiff asserts administrative exhaustion should not be viewed
     under Rule 12(b)(1), as the Supreme Court in *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 550
24   (2019), stated "Title VII's charge-filing requirement is not of a jurisdictional cast." (ECF No. 22
     at 10.) In reply, Defendant maintains "Title VII's exhaustion requirement is 'mandatory' under
25   *Fort Bend* even if not jurisdictional[.]" (ECF No. 25 at 3 n.1.) Indeed, the Supreme Court held
     that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a
26   jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty.*, 587
     U.S. at 551. Accordingly, the Court construes Defendant's motion to dismiss the race
27   discrimination claim for lack of subject matter jurisdiction under Rule 12(b)(1) as a motion to
     dismiss for failure to state a claim under Rule 12(b)(6).
28

6

1  promotion; and (4) Plaintiff fails to state a claim for a hostile work environment based on race or

2  retaliation.  (ECF No. 16-1 at 12–21.)  The Court considers Defendant's arguments in turn.

3  A.    Administrative Exhaustion[4]

4  Defendant argues it is clear from Plaintiff's formal EEO administrative complaint that she

5  did not plead a race discrimination claim because she did not include race discrimination as a

6  claim, she did not check the "race" box on the form, nor did she allege race discrimination (or

7  anything approximating such a claim) in the narrative portion of her complaint.[5]  (ECF No. 16-1

8  at 13.)  Defendant acknowledges Plaintiff alleges new facts for the first time in the FAC, but

9  contends the only new allegation as to events occurring before the conclusion of the investigation

10  is Plaintiff's allegation "that her EEO counselor told her at the initial interview that her race

11  discrimination claims would be included in her new complaint and therefore there was nothing

12  she needed to do to exhaust them."  (*Id.* at 14–15.)  In opposition, Plaintiff asserts that she alleges

13  sufficient facts to establish race discrimination was within the scope of the EEOC proceeding.

14  (ECF No. 22 at 15.)  Plaintiff contends, therefore, that these same facts establish exhaustion at the

15  pleading stage.[6]  (ECF No. 22 at 15.)

16  _____

17  [4]    Defendant requests the Court take judicial notice of Plaintiff's formal EEO complaint

18  (Exhibit 2).  (ECF No. 16-1 at 9 n.1; ECF No. 16-2.)  In opposition, Plaintiff asserts Defendant
misuses judicial notice under Rule 12(b)(6) standards by only requesting judicial notice of select
pieces from a 600-page administrative record and contends exhaustion turns on numerous other

19  records.  (ECF No. 22 at 12.)  Courts have found EEO forms appropriate for judicial notice.
*Adetuyi v. City & Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1080–81 (N.D. Cal. 2014)

20  (granting defendant's request to take judicial notice of plaintiff's EEOC intake questionnaire and
Department of Fair Employment and Housing ("DFEH") charge, the EEOC and DFEH letters

21  indicating receipt of the questionnaire and charge, and the DFEH right-to-sue letter); *see also*
*Nkwuo v. Santa Clara Cnty. Hum. Res.*, No. 16-cv-06741-BLF, 2017 WL 3605220, at *3 (N.D.

22  Cal. Aug. 21, 2017) (granting judicial notice of plaintiff's EEOC charge and defendant's
response).  Accordingly, Defendant's request for judicial notice of Exhibit 2 is GRANTED.

23  Because the Court does not rely on any of Defendant's other exhibits in resolving the instant
motion, Defendant's other requests for judicial notice are DENIED.

24

25  [5]    Defendant also argues it is clear from the other exhibits it attempted to judicially notice

26  that Plaintiff did not plead a race discrimination claim.  (ECF No. 16-1 at 13.)  However, because
the Court does not need to examine these documents to resolve the instant motion, the Court

27  declines to consider Defendant's arguments with respect to these documents.

28  [6]    Plaintiff appears to construe Defendant's exhaustion argument to be that her EEO charge

1    Even though administrative exhaustion is no longer a jurisdictional requirement post-*Fort*

2  *Bend*, because the Supreme Court stated it is a "mandatory" "processing rule," a plaintiff must

3  still allege compliance with the requirement in order to state a claim on which relief can be

4  granted. *Fort Bend Cnty.*, 587 U.S. at 551; *Williams*, 2019 WL 6311381, at *6; *Hallmon v.*

5  *Stanislaus Cnty. Hum. Res. Dep't*, No. 1:19-cv-01623-DAD-EPG, 2022 WL 1204705, at *4. To

6  establish "substantial compliance with administrative exhaustion, the allegations of plaintiff's

7  judicial complaint must be 'like or reasonably related to the allegations' in the administrative

8  complaint submitted to the EEO, such that they would fall within 'the scope of an EEOC

9  investigation which [could] reasonably be expected to grow out of the [administrative] charge of

10  discrimination.'" *Hallmon*, 2022 WL 1204705, at *4 (citing *Sosa v. Hiraoka*, 920 F.2d 1451,

11  1456 (9th Cir. 1990); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (holding

12  that a court may consider "all claims of discrimination that fall within the scope of the EEOC's

13  actual investigation or an EEOC investigation that could reasonably be expected to grow out of

14  the charge")).) "A new allegation can reasonably be expected to have grown out of another

15  charge if the new allegation is at least 'consistent with the plaintiff's original theory.'"

16  *Randhawa v. Intel Corp.*, No. , 2022 WL 976957, at *3 (E.D. Cal. Mar. 31, 2022) (citing

17  *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2022).

18    To make this determination, courts may consider "such factors as the alleged basis of the

19  discrimination, dates of discriminatory acts specified within the charge, perpetrators of

20  discrimination named in the charge, and any locations at which the discrimination is alleged to

21  have occurred." *Vasquez*, 349 F.3d at 644 (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091,

22  
23  was untimely because she did not contact the EEO office within 45 days of the discriminatory
acts. (ECF No. 22 at 17.) In its reply, Defendant contends that even if Plaintiff had fulfilled the
24  45-day requirement, she still did not include race discrimination in her formal EEO complaint.
(ECF No. 25 at 2–3.) Accordingly, the Court construes Defendant's argument to be that Plaintiff
25  generally failed to exhaust her race discrimination claim — not specific to any 45-day
requirement.

26  
27    Plaintiff also argues that "an equitable exception to the exhaustion requirement is when an
EEOC representative misleads the plaintiff concerning her claim." (ECF No. 22 at 15.)
28  However, because Plaintiff does not substantively develop this argument, the Court declines to
consider it.

1  1100 (9th Cir. 2002), *abrogated on other grounds by Fort Bend Cnty.*, 587 U.S. 541).  The

2  Supreme Court and Ninth Circuit have "directed district courts to construe administrative charges

3  'liberally,' *Josephs* [*v. Pac. Bell*], 443 F.3d [1050], 1061 — even with the 'utmost liberality,'

4  *B.K.B.*, 176 F.3d at 1100 (citation omitted) — so as to 'protect the employee's rights and statutory

5  remedies." *Randhawa*, 2022 WL 976957, at *3 (citing *Fed. Exp. Corp. v. Holowecki*, 552 U.S.

6  389, 406 (2008)).  Finally, "[t]he exhaustion of administrative remedies 'is an affirmative

7  defense, [so] the defendant bears the burden of pleading and proving it." *Id.* (citing *Kraus v.*

8  *Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009).

9  "As a result, when a defendant moves to dismiss on the basis of a plaintiff's failure to exhaust, the

10  motion cannot be granted unless it is 'obvious' or 'clear' that the claims were not exhausted." *Id.*

11  (citing cases).

12        Here, the Court has reviewed Plaintiff's administrative complaint dated April 11, 2019

13  that Defendant submitted in its request for judicial notice.  Upon review, the Court notes the

14  following: (1) only the reprisal box was checked in "Section I – Complaint Information," not the

15  race box (ECF No. 16-2 at 10); and (2) the attached documents to "explain when and how you

16  were discriminated against" do not explicitly reference race discrimination (*id.* at 10, 13–16).

17  The only line that could hint at race discrimination is Plaintiff's statement: "I filed an EEOC

18  complaint on Tuesday[,] September 18, 2018." (*Id.* at 13.)  Plaintiff further elaborates in the FAC

19  that on September 18, 2018, she initiated the administrative process by filing complaints of race

20  discrimination with the EEO office but only withdrew that initial charge based on CHRA's

21  intentional plan to falsely convince Plaintiff that the employer would provide her with the training

22  and advancement she deserved, and that to pursue the EEO complaint would jeopardize her

23  position at the agency.  (ECF No. 12 ¶ 41.)  Plaintiff also alleges that she insisted on a reference

24  in her renewed complaint to the prior complaint and its allegations to ensure her prior allegations

25  of continuing race discrimination and hostile work environment were renewed.  (*Id.* at ¶ 42.)

26  Plaintiff otherwise makes several allegations with respect to a race discrimination claim as

27  follows:

28  ///

9

Because of her race, at CHRA [P]laintiff was:

- Isolated from the team, put on the west end of the work space, when everyone else was located on the opposite side. Other employees were told that they did not need to call on her for work projects. She found herself in a[n] environment where non-African American employees generally simply did not interact with her at all.

- Given reduced work responsibilities, and left out of the loop on planning and administration. Ms. Newland consistently scheduled departmental meetings without informing [Plaintiff], or inviting her to participate.

- Denied training on the tools and systems required for her advancement. Repeated training requests were rejected, and [P]laintiff was assigned a "trainer" who refused to meet or communicate with her.

- Given a poor performance review, for the first time in her long employment history in public service. This review was based on false, undocumented accusations and vague, subjective criteria.

- Kept at GS 7, while she watched younger, less qualified Non-African Americans receive promotions, graduating to GS 9 and 11. Meanwhile, the only other African American employee in her group – Lumbala Wa Lumbala – received similar discriminatory treatment. In addition to the stress of having to work in a hostile environment, [Plaintiff] was deprived of performance bonuses and pay increases.

(*Id.* at ¶ 12.) In light of these well-pleaded allegations of race discrimination, Plaintiff's allegations that she filed a prior race discrimination complaint on September 18, 2018, and Plaintiff's statement in her April 11, 2019 administrative complaint that she "filed an EEOC complaint on Tuesday[,] September 18, 2018," the Court finds Defendant has not met its burden to establish that it "is 'obvious' or 'clear' that the claims were not exhausted." *Randhawa*, 2022 WL 976957, at *3.

Construing the administrative charge with the "utmost liberality," the Court finds the allegations of Plaintiff's judicial complaint are "like or reasonably related to the allegations" in the administrative complaint. *Hallmon*, 2022 WL 1204705, at *4. Accordingly, Defendant's motion to dismiss the race discrimination claim on the basis of administrative exhaustion is DENIED.

B.    Race Discrimination (Claim One)

Defendant argues Plaintiff "fails to allege facts to support a plausible inference that she received differential treatment because of her claimed protected characteristics." (ECF No. 16-1 at 16.) Defendant elaborates that the "FAC does not include allegations of direct discrimination, such as derogatory comments about [P]laintiff's race," "[n]or does [it] allege circumstantial facts sufficient to support an inference of discrimination, such as that a less qualified individual of a different race was selected[.]" (*Id.*) Defendant further argues the FAC does not contain "information about comparators sufficient to permit a plausible inference that those individuals were similarly situated to [P]laintiff." (*Id.* at 17.) Defendant maintains the FAC offers only "conclusory and vague statements," as there are no allegations to link her race discrimination allegations to her non-promotion. (*Id.*)

In opposition, Plaintiff asserts her allegations are more than sufficient to state a claim at the pleading stage, as she "identifies multiple instances of her white supervisors and her white manager teaming up with white co-workers to treat her and Lumbawa unequally with respect to work assignments, training, promotion, performance reviews, isolation, false criticism[,] and other vital work conditions." (ECF No. 22 at 19.) Plaintiff maintains this also includes her allegations regarding the training and promotion to "trick" her into withdrawing the September 2018 charge, which she was denied after she withdrew the charge. (*Id.*) Plaintiff notes she does not have to identify comparators at the pleading stage, especially given her allegations regarding work conditions denied to her and Lumbawa and her allegation of discriminatory intent. (*Id.*) Plaintiff further asserts her specific allegations about systemic racism against African Americans (the subject of her meeting with Jenson) establish discriminatory intent. (*Id.* at 20.)

Title VII forbids an employer from discriminating based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A plaintiff in a disparate treatment case must show by either direct or circumstantial evidence that "the motive to discriminate was one of the employer's motives." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). A plaintiff may establish a case for disparate treatment by showing she: (1) was a member of a protected class; (2)

1    was qualified for the position and performing the job satisfactorily; (3) experienced an adverse

2    employment action; and (4) that "similarly situated individuals outside [the] protected class were

3    treated more favorably, or other circumstances surrounding the adverse employment action give

4    rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th

5    Cir. 2010) (quoting *Peterson v. Hewlett–Packard Co.,* 358 F.3d 599, 603 (9th Cir. 2004)).

6            Here, with respect to the first two elements, Plaintiff alleges she is an African-American

7    woman, her supervisor stated she was basically "overqualified" for her job, and she was qualified

8    for the position of Human Resources Specialist.  (ECF No. 12 ¶¶ 5, 14, 17.)  With respect to the

9    third element, Plaintiff alleges she was denied a promotion to Human Resources Specialist.  (*Id.*

10   at ¶ 17); *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (holding that "refusal to

11   consider for promotion" is an adverse employment action).  With respect to the fourth element,

12   Plaintiff alleges "she watched younger, less qualified Non-African Americans receive

13   promotions, graduating to GS 9 and 11," "the only other African American employee in her group

14   – Lumbala Wa Lumbala – received similar discriminatory treatment," and "motivated by racial

15   discrimination and with retaliatory animus for [P]laintiff's filing of an EEO complaint, Director

16   Jenson and Supervisor Newland made a decision to deny [P]laintiff a promotion to Human

17   Resources Specialist[.]"  (ECF No. 12 ¶¶ 12, 17.)  Because Plaintiff alleges employees outside of

18   her protected class were treated more favorably and alleges the only other African American

19   employee received discriminatory treatment, Plaintiff sufficiently establishes the fourth element.

20           Accordingly, Defendant's motion to dismiss the race discrimination claim is DENIED.

21                          C.      Retaliatory Non-Promotion (Claim Two)

22           Defendant argues there is no causal link between Plaintiff's protected activity (her

23   September 2018 complaint) and any adverse employment action (denial of a promotion to Human

24   Resources Specialist).  (ECF No. 16-1 at 18.)  Specifically, Defendant argues that (1) because

25   there was a lapse in time between the September 2018 EEO complaint and the February 2019

26   non-promotion, there is no inference of causation and (2) Plaintiff otherwise does not allege any

27   non-conclusory facts linking the withdrawn September 2018 EEO complaint and the 2019 non-

28   promotion.  (*Id.*)

1    In opposition, Plaintiff asserts Defendant's "contorted" arguments regarding timing do not

2    support dismissal.  (ECF No. 22 at 20.)  Specifically, Plaintiff contends she "alleges the

3    supervisor and manager made false promises and representations immediately after the September

4    2018 charge, but jumped back to the plan to force her resignation immediately after its

5    withdrawal, and then they ignored, failed to investigate and even lied about her complaint in

6    February 2019, all supporting the retaliation complaint initiated in March of 2019."  (*Id.*)

7        "To state a claim for retaliation, a plaintiff must allege she (1) engaged in a protected

8    activity, (2) her employer subjected her to a materially adverse employment action, and (3) a

9    causal link exists between the protected activity and the adverse action."  *Cloud v. Brennan*, 436

10   F. Supp. 3d 1290, 1298 (N.D. Cal. 2020) (citing *Westendorf v. W. Coast Contractors of Nev.,*

11   *Inc.*, 712 F.3d 417, 421 (9th Cir. 2013)).  The Ninth Circuit has held that "when adverse

12   employment decisions are taken within a reasonable period after complaints of discrimination

13   have been made, retaliatory intent may be inferred." *Passantino v. Johnson & Johnson Consumer*

14   *Prod., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375–76

15   (9th Cir. 1987) (finding causation based on timing of retaliation); *Miller v. Fairchild Indus., Inc.*,

16   885 F.2d 498, 505 (9th Cir. 1989) (holding that discharges 42 and 59 days after EEOC hearings

17   were sufficient to establish prima facie case of causation); *Hashimoto v. Dalton*, 118 F.3d 671,

18   680 (9th Cir. 1997)).

19       Here, the parties dispute the third element of a retaliation claim — whether a causal link

20   exists between Plaintiff's withdrawn September 2018 EEO complaint and the February 2019

21   denial of a promotion to Human Resources Specialist.  First, the Court finds Plaintiff does not cite

22   to sufficient case law or authority to establish that an almost six-month delay between the alleged

23   protected activity and adverse employment action is sufficient to establish retaliatory intent based

24   on timing alone.  Second, the Court agrees with Defendant that Plaintiff does not allege sufficient

25   facts to link the September 2018 complaint with the 2019 non-promotion.  For example, Plaintiff

26   "does not allege that [Jenson and Newland] had any knowledge of her prior EEO complaint in

27   September 2018 nor, even assuming they had knowledge, any facts connecting the filing of her

28   complaint with the non-[promotion] nearly half a year later," nor does Plaintiff allege the specific

13

1  qualifications of the individuals who were selected for the position (and that she possesses those

2  qualifications).  (ECF No. 16-1 at 18.)   The Court therefore finds Plaintiff does not allege

3  sufficient facts to establish causation.

4         Here as well, the Court cannot determine "that the pleading could not possibly be cured by

5  the allegation of other facts." *Lopez*, 203 F.3d at 1130.  Accordingly, Defendant's motion to

6  dismiss the retaliatory non-promotion claim is GRANTED with leave to amend.

7              D.    Hostile Work Environment Based on Race or Retaliation[7]

8         Defendant argues that Plaintiff's allegations of race discrimination "are far less severe and

9  pervasive" than allegations in other cases with hostile work environment claims.  (ECF No. 16-1

10  at 19–20 (citing *Manatt v. Bank of America*, 339 F.3d 792, 795 (9th Cir. 2003); *Kortan v. Calif.*

11  *Youth Authority*, 217 F.3d 1104 (9th Cir. 2000); *Vasquez*, 349 F.3d at 643–44).)  Defendant

12  contends it is unclear how certain events Plaintiff alleges in the FAC are tied to Plaintiff's race or

13  reprisal.  (*Id.* at 20.)

14         In opposition, Plaintiff maintains she alleges how "she was subject to a continuing course

15  of hostile treatment based on her race and complaints about systemic racism at CHRA" and the

16  allegations are more than sufficient to state a claim at the pleading stage.  (ECF No. 22 at 19.)

17  Plaintiff also asserts her "specific allegations of systemic racism against African Americans at

18  CHRA — the very subject of her meeting with Jenson — establish discriminatory intent, a severe

19  and pervasive hostile work environment, and lack of credibility to [D]efendant's assertion of non-

20  discrimination."  (*Id.* at 20.)

21         In reply, Defendant asserts it is unclear how Plaintiff's allegations are tied to race or

22  reprisal.  (ECF No. 25 at 9.)  Defendant also asserts "there must be some tie between the

23  protected category and the severe and pervasive treatment," and Plaintiff's allegations regarding

24  her white supervisors and white coworkers treating her unequally in discrete incidents such as

25  training, promotions, and performance reviews are not elements of a hostile work environment

26

27  _____

[7]     The Court notes at the outset that Plaintiff did not specifically enumerate this claim as a
28  claim for relief in the FAC.  (*See* ECF No. 12.)  Plaintiff is advised that she must specifically
   enumerate the hostile work environment claim (or any other claim) in any amended complaint.

1    claim.  (*Id.* at 9–10.)

2         To state a hostile work environment claim under Title VII, a plaintiff must show that: "(1)

3    the defendants subjected her to verbal or physical conduct based on her [race or retaliation]; (2)

4    the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

5    conditions of her employment and create an abusive working environment."  *ANA Maria Soares*

6    *v. California*, No. 2:16-cv-00128 WBS EFB, 2016 WL 3519411, at *2 (E.D. Cal. June 28, 2016)

7    (quoting *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008)).  A hostile work

8    environment "must be both objectively and subjectively offensive, one that a reasonable person

9    would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Id.* (citing

10   *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).  To determine whether an

11   environment is "sufficiently hostile or abusive," courts look "at all the circumstances," including:

12   "the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or

13   humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

14   employee's work performance.'"  *Id.* (citing *Faragher*, 524 U.S. at 788; *Harris Forklift Sys., Inc.*,

15   510 U.S. 17, 22 (1993)).

16        Here, the parties dispute the third element of this claim — whether "the conduct was

17   sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

18   working environment."  *ANA Maria Soares*, 2016 WL 3519411, at *2.  With respect to this

19   element, Plaintiff's allegations of being denied training and promotions and being given poor

20   performance reviews are common personnel activities that do not generally give rise to a

21   harassment claim.  *Velente-Hook v. Eastern Plumas Health Care*, 368 F. Supp. 2d 1084, 1102 –

22   03 (E.D. Cal. 2005) ("Unlike other forms of discrimination, harassment or 'hostile work

23   environment' claims concern actions 'outside the scope of job duties which are not of a type

24   necessary to business and personnel management.")  Plaintiff asserts "[s]he identifies multiple

25   instances of her white supervisor and her white manager teaming up with white co-workers to

26   treat her and Lumbawa unequally with respect to work assignments, training, promotion,

27   performance reviews, isolation, false criticism[,] and other vital work conditions."  (ECF No. 22

28   at 19.)  Plaintiff does not point to any "severe or pervasive" conduct — nor does the Court find

                                              15

any such allegations in its review of the FAC — that are not related to common personnel activities.

The Court further agrees with Defendant that the allegations connected with Plaintiff's race are far less severe and pervasive than in the hostile work environment cases Defendant cites. (ECF No. 16-1 at 19–20); *see Manatt*, 339 F.3d at 795 (finding no hostile work environment claim where plaintiff alleges her coworkers told jokes in which the phrase "China Man" was used, her coworkers made fun of her accent, and her coworkers "pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians"); *Kortan*, 217 F.3d 1104 (finding no hostile work environment claim based on sex where a supervisor allegedly referred to an employee as a "regina," said the employee "laughs like a hyena," referred to another employee as a "madonna," a "regina," and a "castrating bitch," and referred to women generally as "bitches" and "histrionics"); *Vasquez*, 349 F.3d at 643–44 (finding employer's conduct was not severe or pervasive enough to constitute a hostile work environment, where he stated plaintiff had "a typical Hispanic macho attitude," he should consider transferring to the field because "Hispanics do good in the field," and he was yelled at in front of others).

Based on the foregoing, Plaintiff fails to sufficiently allege the third element to state a hostile work environment claim.  Accordingly, Defendant's motion to dismiss Plaintiff's hostile work environment claim is GRANTED with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  (ECF No. 16.)  Plaintiff may file an amended complaint, only to cure the deficiencies addressed herein, not later than thirty (30) days from the electronic filing date of this Order.  Defendant shall file a responsive pleading not later than twenty-one (21) days from the filing date of the amended complaint.  If Plaintiff opts not to amend the complaint, the Court will proceed on the remaining claim in the FAC.

//

//

//

1       IT IS SO ORDERED.

2 Date: March 21, 2025

3

4

5 _____

6 TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28